In the Matter of Lists of HIGHWAY-RAILROAD CROSSINGS AT GRADE, Located Wholly or Partly in the City of Buffalo, the Elimination of Which Is Suggested for Consideration in the Year 1929, Filed with the Public Service Commission by the Grade Crossing and Terminal Station Commission of the City of Buffalo, The City of Buffalo and the County of Erie. (Case No. 5202.)

THE CITY OF BUFFALO, Appellant; PUBLIC SERVICE COMMISSION and Others, Respondents.*

Fourth Department, May 8, 1929.

* Revd., 251 N. Y. 331.

*Gregory U. Harmon, Corporation Counsel [Andrew P. Ronan, Assistant Corporation Counsel, of counsel], for the appellant.*

*Charles G. Blakeslee [Russel B. Burnside of counsel], for the respondent Public Service Commission.*

EDGCOMB, J.   Section 14 of article 7 of the Constitution of the State of New York, as amended at the general election held on November 8, 1927, authorizes the creation of a State debt, not exceeding in the aggregate $300,000,000, to aid in the elimination of railroad grade crossings.

To make effective the provisions of this amendment, the Legislature, at its session in 1928, passed several acts looking toward the doing away with grade crossings in various cities and sections of the State, including chapter 679, commonly known as the Buffalo Grade Crossing Elimination Act.

That statute provides, among other things, for the adoption of a program of work which shall be performed each year. The Grade Crossing and Terminal Station Commission, commonly called the Buffalo Commission, is directed to file with the Public Service Commission, on or before October first of each year, a list of crossings located wholly or partly within the city of Buffalo, the elimination of which is suggested for consideration during the ensuing calendar year. The city is given a like privilege. The State Commission is required to hold public hearings upon such lists, and such additional crossings as it deems should be included. Upon the completion of such hearings, and not later than December first, the Public Service Commission is required to designate the crossings selected for elimination during the ensuing year. Its choice is final; it is not bound to accept the recommendation of either the city or the local commission.

Pursuant to these requirements, the Buffalo Commission and the city both filed with the Public Service Commission a list of grade crossings which they suggested should be included in the 1929 program. Among such crossings was Starin avenue where it intersected the tracks of the Erie railroad.

A hearing was had and an order was made designating the crossings the elimination of which should be considered during

the calendar year of 1929. The recommendations of the city and the Buffalo Commission were followed in all respects, except as to Starin avenue. The Public Service Commission held that this crossing was not one at grade, within the meaning of that term as used in the Constitution and in chapter 679 of the Laws of 1928, and excluded it from the list, not as a matter of discretion, but because it could not be placed there as a matter of law. The city, pursuant to the permission granted to an aggrieved party by section 10 of said act (since amd. by Laws of 1929, chap. 528), has appealed to this court from such order.

The only question to be determined here is the nature of the crossing in question, and whether or not it comes within the definition of the term " railroad crossings at grade," as used in the Constitution and the statute.

This brings us to a discussion of the situation of the Erie crossing at Starin avenue. On April 13, 1921, the common council of the city of Buffalo adopted a resolution of intention to open, lay out, extend and construct Starin avenue across the tracks of the Erie Railroad Company and of the New York, Lackawanna and Western Railroad Company, from the southerly right of way line of the Erie to the northerly city line of Buffalo. On January 31, 1923, the council adopted a resolution directing that a petition be presented to the Public Service Commission, pursuant to the provisions of section 90 of the Railroad Law, asking that body to determine whether the new street should pass over or under the tracks of said railroads, or at grade. Such petition was presented, and on August 2, 1923, an order was made which provided, among other things: " That Starin Avenue as extended and laid out by the Council of the City of Buffalo shall cross under the tracks of the Erie Railroad in a subway which shall be not less than 80 feet wide between neat lines of abutments, consisting of a clear roadway 50 feet wide and two sidewalks 15 feet wide. The structure shall consist of a three-span solid floor, through plate girder bridge, supported by steel columns and masonry abutments. The minimum clearance between the crown of the finished surface of the roadway and the underside of the structure shall be 14 feet. The tracks shall be raised about 11.7 feet at Starin Avenue with an ascending grade on the railroad of about 0.566 per cent from the west and an ascending grade of about 0.219 per cent from the east."

The order further provided that the street should pass under the Delaware, Lackawanna and Western tracks, and specified in detail the construction of the underpass.

It developed on the hearing that the Erie Railroad Company

was not in a financial condition to defray its share of the expense of the work ordered. After a general discussion of the situation, in which the representatives of the city took part, it was finally agreed by all interested parties that if the Erie Railroad Company would construct at its own cost a temporary crossing in accordance with certain specified requirements, it might defer the raising of its tracks and the construction of the undercrossing for a time. Such a provision was included in the order. Thereafter, the Delaware, Lackawanna and Western Railroad Company constructed the undercrossing which it was required to build. After some delay and more or less correspondence, the Erie Railroad Company built a temporary crossing at grade. It has never erected the permanent structure specified in the order.

So that, when these lists of the work which it was desired should be included in the 1929 program were presented to the Public Service Commission, and when that body made the order appealed from, the tracks of the Erie Railroad Company actually crossed Starin avenue at grade, under a temporary arrangement approved by the city, although there was in existence an order of the Public Service Commission, duly granted in a proceeding instituted by the appellant, which determined that the permanent crossing should be under the Erie tracks and not at grade.

Under these circumstances, just what is the nature of this crossing? Is it to be determined by the actual physical condition which existed at the time the 1929 program was adopted, and which was only temporary, or must it be decided by what the Public Service Commission said should eventually be the permanent structure at this point?

I have read the Constitution and the Buffalo Grade Crossing Elimination Act, in an endeavor to find some provision which will throw light on the true interpretation to be given to the expression " railroad crossings at grade," but without avail. The statute (§ 2, subd. 1) provides that " the terms ' railroad crossings at grade ' and ' crossings,' as employed in this act, may include an existing lengthwise occupation at grade of public streets as the Public Service Commission may determine by order." But that does not help.

Reverting to the order of the Public Service Commission of August 2, 1923, which was made in conformity with the provisions of section 90 of the Railroad Law, it will be noted that it positively and unqualifiedly ordered the street to pass under the Erie tracks, and determined in minute detail the manner in which this should be done, specifying a structure of the most permanent nature. It fixed the nature of the crossing as an undercrossing and not one

at grade. The order has the force and effect of a statute enacted by the Legislature. (*People ex rel. Bridge Operating Co.* v. *P. S. Comm.*, 153 App. Div. 129, 137; *People ex rel. Kings County Lighting Co.* v. *Straus*, 178 id. 840, 842.)

The fact that the Erie Railroad Company has not as yet carried out the provisions of the order relating to the permanent structure and, pending that work, has, with the consent of the Commission and the city, constructed a temporary crossing at grade, does not, in my opinion, change the nature of the crossing. The present arrangement was permitted for a limited time only, and was never considered to be permanent.

The order of 1923 was not appealed from. It has never been vacated. I think that it is still in full force and effect, and that the Erie Railroad Company can, at any time, be compelled to abandon its temporary crossing and build the permanent structure designated in the order made in the proceeding known as Case No. 1246.

If I am correct in my conclusions, the decision of the Public Service Commission holding that the crossing in question could not be included in the elimination program for 1929 under the State bond issue, because it was not a grade crossing within the meaning of that term as used in the Constitution and the statute, was right and should not be disturbed.

The order should be affirmed, with costs.

All concur. Present — SEARS, P. J., CROUCH, EDGCOMB, THOMPSON and CROSBY, JJ.

Order affirmed, with costs.